## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **STATE OF KANSAS,** *ex rel.* **DEREK SCHMIDT, in his official capacity as Attorney General of the State of Kansas,**<br><br>     **Plaintiff,**<br><br>**v.**<br><br>**UNITED STATES DEPARTMENT OF DEFENSE,**<br><br>    **Defendant.** | **Case No.  16-4127-DDC-KGS** |

### MEMORANDUM AND ORDER

When reviewing whether an agency fulfills its duties in response to a Freedom of Information Act ("FOIA") request, the court must ensure the agency faithfully adheres to the delicate balance FOIA aims to achieve.  On one hand, FOIA desires "to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption[,] and to hold governors accountable to the governed." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978).  So, courts must construe FOIA requests broadly to favor disclosure. *Trentadue v. Integrity Comm.*, 501 F.3d 1215, 1226 (10th Cir. 2007).  But FOIA's disclosure requirements have their limits.  FOIA does not require agencies to conduct an exhaustive search of every record they possess.  *Trentadue v. FBI*, 572 F.3d 794, 797 (10th Cir. 2009).  And FOIA allows agencies to withhold certain types of information.  *See* 5 U.S.C. § 552(b).

Here, Kansas—the plaintiff—asked the United States Department of Defense—the defendant—to produce documents about President Obama's plan to close the military detention

center in Guantanamo Bay ("GTMO").  When defendant did not comply with plaintiff's request immediately, plaintiff filed this suit.  *See* Doc. 1.  Defendant since has produced more than 2,000 pages of documents about GTMO's closure.  Defendant now moves for summary judgment, arguing that its response achieves the balance FOIA desires (Doc. 21).  Plaintiff argues that the court should deny the motion because defendant has conducted an insufficient search, withheld documents impermissibly, and produced insufficient information to fulfill one of plaintiff's requests.

For reasons explained below, the court grants defendant's motion in part and denies it in part.  After reviewing the parties' submissions, the court concludes that no genuine dispute of material fact exists that defendant failed its FOIA obligations except for five documents, which the court will review *in camera* to determine if defendant properly withheld some information.  After discussing the facts governing this motion, the court explains its reasoning.

## I.    Facts

The following facts are uncontroverted or, where controverted, are stated in the light most favorable to plaintiff, the nonmoving party.  *Scott v. Harris*, 550 U.S. 372, 378 (2007).

### *Background*

GTMO is a U.S. Naval base on the island of Cuba.  In 2002, the U.S. government began detaining combatants captured in the Middle East.  The base has been the source of controversy and in 2009, President Obama signed an Executive Order directing defendant to research the feasibility of closing GTMO and transferring detainees to, among other places, the U.S. mainland.  Exec. Order No. 13,492, 74 Fed. Reg. 4,897, 4,898 (Jan. 22, 2009).  Soon after that order, defendant tasked the Office of Detainee Policy ("ODP") to lead this research.  The ODP is a department within the Office of the Undersecretary of Defense and is the lead office within

defendant for detainee policy.  When ODP began working on the GTMO closure plan, it required

all employees to save emails about that plan in a separate folder in their email boxes and place

any documents about the closure plan in a designated folder on the ODP's shared drive.

On December 16, 2015, plaintiff sent defendant a FOIA request.  Plaintiff asked

defendant to produce information created between December 26, 2013, and December 16, 2015,

about:

> (a) the implementation of [President Obama's Executive Order], concerning the
> disposition of individuals detained at [GTMO] and the closure of the detention
> facilities located there;
>
> (b) the transfer or potential transfer to the United States mainland of individuals
> currently detained at [GTMO];
>
> (c) site visits to military bases or detention facilities in Kansas or any other State
> as part of, or related to, an effort to find a facility to house individuals currently
> detained at [GTMO];
>
> (d) the modification or construction of any military base or federal or state-owned
> prison, penitentiary, or other detention facility for the purpose of housing
> individuals currently detained at [GTMO];
>
> (e) any assessment of the suitability of any location at Fort Leavenworth, Kansas,
> or elsewhere within the State of Kansas, as a site for potentially housing
> individuals currently detained at [GTMO];
>
> (f) surveys or questionnaires regarding potential transfer sites on the United States
> mainland for individuals currently detained at [GTMO];
>
> (g) any expenditures of funds related to (a) through (f), including any travel or
> personnel costs related to surveying potential transfer sites on the United States
> mainland for individuals currently detained at [GTMO]; [and]
>
> (h) the legal basis for any violation of the funding restrictions Congress has
> imposed [preventing the federal government from spending money on activities
> related to GTMO's closure].

Doc. 1-1 (FOIA Request) at 2–3.  The parties made two modifications to plaintiff's request.

First, plaintiff agreed to change (a) so that it included only information about the possible

relocation of GTMO detainees to Kansas.  Doc. 1-3 (FOIA Modification Email) at 2.  Second,

plaintiff agreed to modify (g) so that it included only information about expenditures defendant incurred traveling to and surveying potential GTMO detainee relocation sites. *Id.* Shortly after the parties agreed to these modifications, President Obama released his GTMO closure plan.

Defendant did not comply with plaintiff's request immediately. So, on July 22, 2016, plaintiff filed this suit, claiming that defendant had a duty under FOIA to release the information plaintiff sought. After plaintiff filed this suit, defendant initially produced a one-page document addressing plaintiff's modified request (g). On November 15, 2016, defendant provided non-classified system documents responsive to plaintiff's request. After that, defendant released the responsive classified documents on a rolling basis, delivering the last set of documents in March 2017. In all, defendant has produced more than 2,000 pages of responsive documents.

### Search Process

As noted above, before defendant received plaintiff's FOIA request, the ODP had segregated emails and documents about GTMO's closure. When defendant began searching for the information that plaintiff had requested, defendant determined that ODP was the only agency with relevant information because it led President Obama's GTMO closure plan development. And it coordinated all communications between the relevant governmental agencies. So, defendant concluded, any information stored outside ODP would duplicate information it possessed.

Three ODP employees then began the search process. They started in ODP's shared drive and the emails ODP had saved when it started the GTMO closure project. They also searched ODP's classified and unclassified system using the search terms "Kansas, Colorado, Charleston, Florence, Leavenworth, Brig, BOP, USDB, CONUS, and closure." Doc. 22-1

(Herrington Decl.) ¶ 8.[1]  Finally, they scanned 20 paper documents that ODP had produced during the GTMO closure project.  *Id.* ¶ 9.  After redacting what ODP thought it should withhold, defendant released the documents to plaintiff.

## II.    Legal Standard

Summary judgment is appropriate if the moving party demonstrates that "no genuine dispute [about] any material fact" exists and that it "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  When applying this standard, the court views the evidence and draws inferences in the light most favorable to the non-moving party.  *Nahno-Lopez v. Houser*, 625 F.3d 1279, 1283 (10th Cir. 2010).  To prevail on a summary judgment motion in a FOIA case, "the defending agency has the burden of showing that its search was adequate and that any withheld documents fall within an exemption to FOIA."  *Whitson v. U.S. Forest Serv.*, 253 F. Supp. 3d 1133, 1139 (D. Colo.), *reconsidered and reversed on other grounds by* 264 F. Supp. 3d 1096 (D. Colo. 2017).  Defendant meets its burden if it provides specific, non-conclusory affidavits that are consistent with the record and submitted in good faith.  *Hull v. IRS, U.S. Dep't of Treasury*, 656 F.3d 1174, 1177–78 (10th Cir. 2011).

## III.    Discussion

Defendant asks the court to grant summary judgment against plaintiff's claim, arguing that it has complied fully with its FOIA obligations.  Plaintiff opposes this request for three reasons.  First, plaintiff argues that defendant conducted an inadequate search.  Second, plaintiff asserts that defendant improperly exempted certain portions of the documents it released.  And last, plaintiff argues that defendant has failed to produce adequate information to satisfy its request for information about the expenditures defendant incurred surveying possible GTMO

---

[1]    Mark H. Herrington serves as Associate Deputy General Counsel in defendant's Office of General Counsel. Herrington Decl. ¶ 1.  He oversees and coordinates defendant's FOIA responses, including this one.  *Id.* ¶ 2.

detainee relocation sites.  The court addresses these arguments in the next three subsections, below.

### A.      The Adequacy of the Search

Plaintiff first quarrels with the adequacy of defendant's search.  When assessing the adequacy of an agency's search, a court must focus on the search process—not the search results. *FBI*, 572 F.3d at 797.  "The reasonableness of an agency's search turns on 'the likelihood that it will yield the sought-after information, the existence of readily available alternatives, and the burden of employing those alternatives.'"  *Id.* at 798 (quoting *Davis v. DOJ*, 460 F.3d 92, 105 (D.C. Cir. 2006)).  To establish that it conducted a reasonable search, the agency must explain that it searched all files likely to have relevant information and that further investigation would prove unduly burdensome.  *Knight v. FDA*, 938 F. Supp. 710, 716 (D. Kan. 1996).  And the agency must describe the type of search it conducted, including any search terms it used.  *Id.*

Here, defendant only searched ODP—the agency leading the GTMO closure plan.  When it conducted its search, ODP used three of its employees.  They started their search by looking in a folder on ODP's shared drive where ODP had centralized all documents about GTMO's closure.  They also asked other ODP employees to move all emails they saved about GTMO's closure to a folder created in response to plaintiff's FOIA request.  Finally, they electronically searched ODP's system using the search terms "Kansas, Colorado, Charleston, Florence, Leavenworth, Brig, BOP, USDB, CONUS, and closure."  Herrington Decl. ¶ 8.

Plaintiff takes exception to two aspects of defendant's search:  where defendant searched and how it searched.  Doc. 27 at 17.  The court addresses these arguments, below.

6

### 1.    The Search Location

To satisfy its FOIA obligations, an agency need not search every place responsive records might exist; instead, the agency only needs to search those places that are reasonably likely to yield relevant records. *See Knight*, 938 F. Supp. at 716. In *Knight*, plaintiff sought information from the FDA about himself relating to a Pepsi extortion and tampering hoax. *Id.* at 712. The FDA responded, explaining that its Office of Criminal Investigations ("OCI") had discovered just two responsive documents. *Id.* at 713. When searching for the documents plaintiff requested, OCI looked through a database of witnesses to, victims of, and subjects of investigations it conducted. *Id.* at 714. Then it looked through its paper files for a file on Pepsi and did a keyword search through its electronic files using the terms "Pepsi," "PepsiCo," and "Pepsi tampering." *Id.* Last, it emailed OCI officials asking if they had any information about plaintiff or the Pepsi investigation. *Id.* OCI explained by affidavit that only OCI was likely to have the relevant files because that office "'was the component of the FDA responsible for carrying out investigations of potentially criminal violations, and all of the tampering investigations were potentially criminal matters.'" *Id.* at 713 (quoting the agency's affidavit).

Defendant filed a summary judgment motion asking the court to find that it fully had complied with FOIA's obligations. *Id.* at 716. Plaintiff opposed this motion, arguing that defendant's search was inadequate. *Id.* Specifically, plaintiff argued that an adequate search required defendant to search outside the OCI. *Id.* Judge Crow disagreed, concluding that "'[t]here is no requirement that an agency search every record system,'" particularly when "the request does not specifically state the place of search." *Id.* (quoting *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)). Instead, Judge Crow held, all an agency must do is explain that no other department is likely to have relevant information. *Id.* Judge Crow

concluded that the OCI's affidavit satisfied that standard and thus found that it conducted an adequate search. *Id.* at 716–71.

Here, the court is faced with a similar situation. Plaintiff's request does not specify where in defendant's many offices to search. *See* FOIA Request at 1. And defendant has explained that ODP is the only department likely to possess files relevant to plaintiff's request because it led the effort to close GTMO. Herrington Decl. ¶ 6. Other agencies, defendant explains, likely have no additional information. *Id.* The court thus concludes FOIA only requires defendant to search ODP.

Plaintiff argues it is implausible that one small office handled the entire GTMO closure plan. But plaintiff never identifies any evidence in the record that creates a genuine issue about the summary judgment facts. Indeed, defendant has explained that while other agencies helped with the closure plan, ODP was the hub. *Id.* It oversaw all communications about the project— both within and outside defendant. *Id.* While it's possible that other information may reside in another department's system, FOIA does not require an agency to search everywhere—only those places reasonably likely to have relevant information. *Knight*, 938 F. Supp. at 716. Since ODP coordinated the entire GTMO closure effort, it is the only place likely to have relevant information. The court thus rejects plaintiff's argument that defendant must search places outside ODP.

### 2.    The Search Process

Next, plaintiff argues that defendant's search process was flawed. Specifically, plaintiff discusses two aspects of defendant's search: the employees who searched ODP's system and defendant's search terms.

Plaintiff argues that the employees who searched ODP's files were self-interested and would lack knowledge about GTMO detainees transferring to the U.S. mainland. Doc. 27 at 17. But plaintiff never supports its assertions. *See Al-Turki v. DOJ*, 175 F. Supp. 3d 1153, 1169 (D. Colo. 2016) ("If the plaintiff can 'offer nothing more than opinion and speculation' regarding the content of the government's sworn declarations, he 'does not undermine the deference normally accorded to an agency.'" (quoting *Carter v. NSA*, 962 F. Supp. 2d 130, 140 (D.D.C. 2013) (internal bracket omitted))). Plaintiff's assertion that these employees would know nothing about GTMO detainees transferring to the U.S. mainland contradicts—without evidentiary support—defendant's affidavit that ODP "is the lead office of [defendant's] policy regarding detainees generally." Herrington Decl. ¶ 5. And plaintiff speculates—once again without evidentiary support—that the employees searched ODP's files poorly because they were self-interested. So, the court rejects plaintiff's argument that the employees conducting the search rendered the search process inadequate.

Plaintiff also argues that—in addition to the search terms ODP used to search its system—it should have used the terms "transfer," "survey," and "detain." Doc. 27 at 17. FOIA only requires agencies to use search terms that target responsive documents. *Looks Filmproduktionen GmbH v. CIA*, 199 F. Supp. 3d 153, 168 (D.D.C. 2016) (holding that an agency need not use plaintiff's suggested search terms because they were "extremely broad and would likely produce a greater number of unresponsive documents than the more targeted search terms employed by the agency"). Here, "detain" is extremely broad because ODP leads defendant's policy formulation on detainees. Herrington Decl. ¶ 5. Any search for the word "detain" thus likely would produce a vast load of unresponsive documents. And defendant has explained that "transfer" and "survey" are not terms unique to the GTMO closure process, which

9

is why defendant chose not to use those terms.  Herrington Decl. ¶ 8.  The court concludes FOIA does not require defendant to search again, using these additional search terms.  And the court finds that defendant has met its FOIA obligations to conduct an adequate search.

### B.    Exemptions

FOIA allows agencies to withhold certain types of information.  *See* 5 U.S.C. § 552(b).  But the court must construe FOIA's exemptions narrowly.  *Integrity Comm.*, 501 F.3d at 1226.  And the agency should disclose any non-exempt information that won't reveal exempt information.  *Id.*

To prove that an agency properly exempted information, it can submit affidavits that justify why the information is exempt.  *Hull*, 656 F.3d at 1177.  If the court cannot conclude with "reasonable certainty" that the agency properly exempted the documents, it can order defendant to produce a *Vaughn* index,[2] or submit the contested documents for *in camera* review.  *Id.* at 1178.  The Tenth Circuit has instructed, however, that "'an *in camera* review should not be resorted to as a matter of course, simply on the theory that "it can't hurt."'"  *Id.* (quoting *Quiñon v. FBI*, 86 F.3d 1222, 1228 (D.C. Cir. 1996)).

Here, defendant invoked five of FOIA's exemptions: 1, 5, 6, 7(E), and 7(F).  Plaintiff only challenges defendant's use of 5, 7(E), and 7(F).  Below, the court first describes what these three exemptions protect.  Then, it addresses plaintiff's arguments against defendant's uses of these exemptions.

### 1.    Description of the Exemptions

The court discusses 7(E) and 7(F) together because they are related to each other.  But it begins with Exemption 5.

---

[2]    A *Vaughn* index looks like and functions as a privacy log does in civil litigation.  It lists each withheld (or partially withheld) document and explains why the agency withheld the information.  *Hull*, 656 F.3d at 1178 n.2.

a.    **Exemption 5**

Exemption 5 protects documents that normally are privileged in the civil discovery context. *NLRB v. Sears Roebuck & Co.*, 421 U.S. 132, 149 (1975). Here, defendant invoked the "deliberative process privilege" when it withheld information under Exemption 5. This privilege exempts documents "that reflect how government decisions are made." *Stewart v. U.S. Dep't of Interior*, 554 F.3d 1236, 1239 (10th Cir. 2009). To qualify for this privilege, the document must be (1) predecisional and (2) deliberative. *Integrity Comm.*, 501 F.3d at 1227.

The "predecisional" quality is the easy part and, of course, not at issue here. A document is predecisional if it is created to help the decisionmaker arrive at a decision, while a postdecisional document explains why the agency made a decision. *Id.* Here, the documents plaintiff requested were produced before President Obama reached his final decision in February 2016. So, all documents produced in plaintiff's FOIA request are predecisional.

The harder question to answer is whether a particular document is deliberative. The term "deliberative" encompasses "'advisory opinions, recommendations[,] and deliberations compromising part of a process by which governmental decisions and policies are formulated.'" *Id.* at 1226 (quoting *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001)). In contrast, purely factual, investigative material falls outside the deliberative process privilege's scope. *Id.* at 1227.

But some factual material will "'so expose the deliberative process within an agency'" that a court must consider it "deliberative." *Id.* (quoting *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 256 (D.C. Cir. 1977)). This occurs when the factual content "would reveal deliberative information by allowing the public to easily infer [deliberative information] from [the factual content]," or the facts are "inextricably intertwined with deliberative material."

*Id.* at 1229.  For example, the deliberative process privilege protects unreleased drafts of purely factual materials because the public "could simply compare the contested draft documents prepared by lower-level [agency] personnel to the final documents adopted by the agency in order 'to reconstruct the predecisional judgments of the administrator.'"  *Id.* at 1228 (quoting *Nat'l Wildlife Fed'n v. U.S. Forest Serv.*, 861 F.2d 1114, 1122 (9th Cir. 1988)).  And the deliberative process privilege protects an agency's factual summary of publicly available information because "disclosure would reveal 'what advice as to [the] importance and unimportance of facts the Administrator received, and how much of it he accepted.'"  *Id.* at 1229 (quoting *Montrose Chem. Corp. of Cal. v. Train*, 491 F.2d 63, 70 (D.C. Cir. 1974)).

As a guide to applying this rule, the court must be attentive to FOIA's two policy justifications for withholding predecisional, deliberative information.  *See id.* at 1226.  First, withholding this information allows government officials to communicate candidly during the decision-making process.  *Id.*  And second, this exemption protects the agency from sending mixed signals through the "premature disclosure of proposed policies" that an agency may not institute, or reasons for an agency's decision that it ultimately declines to adopt.  *Id.*

### b.    Exemption 7(E) and 7(F)

Exemption 7 allows an agency to withhold "records or information compiled for law enforcement purposes," but only if disclosure would create a danger enumerated in the statute.  5 U.S.C. § 552(b)(7).  Here, defendant fears that revealing some of the records would create two dangers:  (a) the danger that the records "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law" (Exemption 7(E)); and (b) the danger that the records "could

12

reasonably be expected to endanger the life or physical safety of any individual" (Exemption 7(F)).  *Id.* § 552(b)(7)(E), (F).

### 2.    Plaintiff's Arguments Against Defendant's Uses of Exemptions

Having reviewed the types of materials protected by Exemptions 5, 7(E), and 7(F), the court now turns to plaintiff's arguments why defendant incorrectly used them.  Plaintiff's arguments against defendant's use of the exemptions fall into two categories.  First, plaintiff broadly attacks defendant's use of the exemptions.  Second, plaintiff attacks specific uses of the exemptions.  The court begins with plaintiff's global attacks on the exemptions and then, turns to plaintiff's complaints of specific uses of the exemptions.

### a.    Global Issues

Plaintiff raises three general issues about defendant's uses of the exemptions.  First, plaintiff argues that defendant must disclose any documents withheld under the deliberative process privilege because it is a qualified privilege and plaintiff has demonstrated a great need for the information.  Second, plaintiff argues that defendant failed its FOIA duty to produce segregable, non-exempt information.  And last, plaintiff contends that defendant's broad use of Exemption 5 undermines FOIA's policies.  The court addresses these three arguments separately, below.

### i.    Qualified Privilege

Plaintiff argues that the court should deny defendant's motion because the summary judgment facts prove plaintiff has overcome defendant's use of the deliberative process privilege.  Defendant responds, asserting that plaintiff cannot overcome defendant's privilege because, under FOIA, the deliberative process privilege is absolute.  The available persuasive authority sides with defendant.  So does the court.

To support its argument that the deliberative process privilege is a qualified privilege, plaintiff directs the court to *In re Sealed Case*, 121 F.3d 729 (D.C. Cir. 1997).  But *In re Sealed Case* is a much different case.  There, a grand jury had subpoenaed the White House to produce documents for an investigation into the former Secretary of Agriculture.  *Id.* at 735.  The White House redacted many documents, claiming in part that the deliberative process privilege protected the documents from exposure.  *Id.*  The prosecutor filed a motion to compel, challenging the White House's use of this privilege.  *Id.*  In it, the prosecutor argued that the grand jury's need for the documents overcame the White House's need for privacy.  *Id.* at 736.  The district court agreed with the White House but never evaluated the grand jury's need for the documents.  *Id.*

The government appealed and the D.C. Circuit reversed.  *Id.*  The Circuit began by providing a broad overview of executive privilege, including the deliberative process privilege.  *Id.*  The court of appeals also explained that "[t]he deliberative process privilege is a qualified privilege and can be overcome by a sufficient showing of need."  *Id.* at 737.  Because the government could overcome this privilege, the district court erred by failing to evaluate the grand jury's need for the information.  *Id.* at 740.  But the Circuit also explained that "[t]his characteristic of the deliberative process privilege is not an issue in FOIA cases because the courts have held that the particular purpose for which a FOIA plaintiff seeks information is not relevant in determining whether FOIA requires disclosure."  *Id.* at 737 n.5; *see also Sears, Roebuck & Co.*, 421 U.S. at 149 n.16 ("However, it is not sensible to construe [FOIA] to require disclosure of any document which would be disclosed in the hypothetical litigation in which the private party's claim is the most compelling.").

Here, plaintiff has asserted a FOIA claim.  It is not a grand jury subpoenaing documents. So, plaintiff's need for the information plays no role in the court's determination whether defendant has discharged its FOIA obligations.  *See Judicial Watch, Inc. v. U.S. Dep't of Homeland Sec.*, 841 F. Supp. 2d 142, 162 (D.D.C. 2012) ("First, [plaintiff] appears to argue that the deliberative process privilege is a qualified privilege and can be overcome by a showing of sufficient need.  While this is an accurate statement of law, [plaintiff] conveniently omits an important proviso—namely, that this characteristic of the deliberative process privilege is not an issue in FOIA cases." (internal citations and bracket omitted)).  The court thus rejects plaintiff's argument that the court should deny defendant's motion based on plaintiff's strong need for the information.

### ii.      Segregable Information

Plaintiff argues that defendant never properly segregated and produced non-exempt information.  FOIA requires the responding agency to produce "[a]ny reasonably segregable portion of a record . . . after deletion of the portions which are exempt . . . ."  5 U.S.C. § 552(b). So, the act requires reviewing courts to analyze whether the agency provided all segregable portions of the record.  *Integrity Comm.*, 501 F.3d at 1230 (remanding a FOIA case, in part because the district court refused to evaluate whether the agency properly produced the segregable portions of the responsive documents).

"Agencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material."  *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007).  But "[t]he quantum of evidence required to overcome that presumption is not clear." *Id.*  In a different context, the Supreme Court has required a FOIA plaintiff, to defeat a summary judgment motion, to provide "evidence that would warrant a belief by a reasonable person that

the alleged Government impropriety might have occurred." *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 174 (2004) (holding that under Exemption 7(C), which allows an agency to withhold a document connected with a law enforcement investigation to protect someone's privacy, a plaintiff may override that exemption by showing government misconduct).

Although no Tenth Circuit case addresses the appropriate standard to apply here, the court believes the Tenth Circuit—if presented with this issue—would apply the same standard the D.C. Circuit uses to determine whether plaintiff has overcome the presumption that defendant disclosed reasonably segregable material. *See Sussman*, 494 F.3d at 1117 (applying the *Favish* standard to determine if the government sufficiently justified its segregation process). Indeed, the *Favish* standard matches the traditional standard courts utilize at summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (holding that summary judgment is inappropriate when a "reasonable jury could return a verdict for the nonmoving party").

Here, plaintiff has not adduced sufficient evidence to overcome the presumption that defendant properly produced the reasonably segregable non-exempt information—except for five documents discussed later. In its affidavit, defendant explained, "All of the documents addressed herein have been carefully reviewed for reasonable segregation of non-exempt information, and, following a line-by-line review, it has been determined that no further segregation of meaningful information in the withheld documents can be made without disclosing information warranting protection under the law." Herrington Decl. ¶ 28. Plaintiff illuminates no part of the record—except for the five documents discussed below—that would create doubt in a reasonable person's mind that defendant failed its FOIA obligation to segregate non-exempt information. Defendant thus has satisfied its general burden to produce segregable, non-exempt information.

### iii.    Defendant's Broad Use of Exemption 5

Plaintiff next argues that defendant improperly invoked Exemption 5 because it broadly asserted this exemption.  Plaintiff contends that this broad use of Exemption 5 created two problems.  First, plaintiff argues that defendant invoked Exemption 5 broadly to hide that it actively was planning to move GTMO detainees to the U.S. mainland.  This effort to hide its activities, plaintiff argues, undermines FOIA's goals.  This argument is farfetched.  Nothing suggests that defendant tried to hide its plan to move GTMO detainees to the U.S. mainland. Indeed, President Obama issued a public executive order directing defendant to research plans to move GTMO detainees to the continental United States.  And later, he published a plan to close GTMO.  The summary judgment facts establish the information defendant withholds under Exemption 5 is deliberative material that it produced before it reached a final decision. Exemption 5 protects this kind of information—except for five documents described later in this Order.  *See Integrity Comm.*, 501 F.3d at 1226.  So, plaintiff fails to create a genuine issue of material fact that defendant has abused this exemption to hide its plans to move GTMO detainees.

Second, plaintiff argues that defendant's use of a broadly based Exemption 5 response creates a genuine issue whether defendant properly could assert this exemption at all.  Doc. 27 at 20.  But this assertion, without more, cannot preclude summary judgment against plaintiff's FOIA claim.  *See Al-Turki*, 175 F. Supp. 3d at 1170 ("If the plaintiff can 'offer nothing more than opinion and speculation' regarding the content of the government's sworn declarations, he 'does not undermine the deference normally accorded to an agency.'" (quoting *Carter*, 962 F. Supp. 2d at 140 (internal bracket omitted))).  And the court would expect Exemption 5 to apply to at least some of the documents plaintiff requested because plaintiff's request expressly

focused on information created before President Obama released his GTMO closure plan. Any responsive documents are, by definition, predecisional. The only question remaining is whether the document is deliberative. As the court explains below, defendant has justified adequately that the documents it withheld are deliberative—except for five documents. The court thus rejects plaintiff's arguments that defendant failed to justify its exemptions generally.

### b.    Individual Documents

Plaintiff challenges several documents defendant exempted. Specifically, plaintiff challenges unclassified documents 129, 165, and 193 and classified documents 77, 78, 101B, 104B, 234, and 241.[3] In the next subsections, the court discusses each document in turn and evaluates defendant's justifications for withholding each.

### i.    Unclassified Document 129 (Bates 333)

Defendant withheld document 129 under Exemption 5 because it contains "analysis regarding costs of military commissions." Doc. 22-1 (*Vaughn* Index) at 27. Plaintiff describes the document as one analyzing costs from 2014. Defendant argues that it took those costs into consideration when making projections about GTMO's closure and "which costs to consider in that analysis or the estimates used in those calculations, are as essential to the deliberative process as the recommendations themselves." Herrington Decl. ¶ 19. The court finds this explanation insufficient.

The Tenth Circuit has disapproved of agencies withholding facts "simply because it reflects a choice as to which facts to include in a document . . . ." *Integrity Comm.*, 501 F.3d at

---

[3]    While plaintiff's enumerated list in its Opposition brief is not a complete list of plaintiff's issues with defendant's withholdings, the court has reviewed the entire *Vaughn* Index and determined that plaintiff's list fairly represents the different justifications defendant invokes. Where necessary, the court identifies documents like the ones plaintiff specifically discusses in its brief.

1229.  This is so because "'[a]nyone making a report must of necessity select the facts to be mentioned. . . .'"  *Id.* (quoting *Playboy Enters., Inc. v. DOJ*, 677 F.2d 931, 935 (D.C. Cir. 1982)). The Tenth Circuit feared that allowing an agency to claim every document with facts as deliberative could justify withholding almost anything.  *Id.*  To be sure, instances exist where an agency's factual compilation would reveal its deliberative process.  *See, e.g.*, *Montrose*, 491 F.2d at 68 (holding that Exemption 5 protected a factual summary of a publicly available record).  But an agency must explain why "the *only* new information which disclosure of [factual] summaries would provide [plaintiff] concerns the mental processes of the agency."  *Id.* (emphasis added). Here, the court cannot determine on the current record whether the disclosure of which costs defendant considered would reveal only information about its deliberative process, like in *Montrose*.  So, the court cannot grant summary judgment against this aspect of plaintiff's claim.

*Reilly v. United States EPA*, 429 F. Supp. 2d 335 (D. Mass. 2006), guides the court's decision here.  In *Reilly*, plaintiff asked the EPA for documents about a new regulation it had enacted for mercury emissions from power plants.  *Id.* at 336.  The EPA withheld some documents, arguing that the deliberative process privilege applied.  *Id.* at 336–37.  Specifically, defendant argued that Exemption 5 protected the results and inputs of a computer model the EPA had run.  The EPA ran the model several times, but only released a few results and the inputs that produced those results.  *Id.* at 338.  The unreleased results and the inputs that led to them, the EPA argued, would reveal which variables the EPA deemed important and thus were deliberative.  *Id.* at 349.

While recognizing the decision was a close one, the court concluded that FOIA required the EPA to release all the models it had run.  *Id.* at 352.  The court reasoned that the models generated "raw data" and thus were investigative tools.  *Id.*; *see also EPA v. Mink*, 410 U.S. 73,

93 (1973) ("Exemption 5 . . . requires different treatment for material reflecting deliberative or policy-making matters on the one hand, and purely factual, investigative matters on the other."), *superseded by statute on other grounds*, Pub. L. No. 93-502, 88 Stat. 1561 (1974). The court acknowledged that the public might draw inferences about the EPA's deliberative process from the inputs it chose. *Reilly*, 429 F. Supp. 2d at 352. But the court concluded that protecting this information would amplify Exemption 5's power in a way that would nullify FOIA's disclosure goal. *Id.*; *see also Integrity Comm.*, 501 F.3d at 1229 (rejecting the idea that the deliberative process privilege protects "factual material simply because it reflects a choice as to which facts to include in a document").

Here, the court cannot conclude on this summary judgment record that the factual information in document 129 is unlike the models in *Reilly*. Defendant's affidavit just explains that the costs considered might reveal its deliberative process without elaborating. This information might consist of raw data that defendant considered in its debate about the estimated cost to close GTMO, thus preventing defendant from shielding it with the deliberative process privilege. *See Reilly*, 429 F. Supp. 2d at 352. But it might instead contain a factual summary like the one in *Montrose* where "the only new information which disclosure of [factual] summaries would provide [plaintiff] concerns the mental processes of the agency." *Montrose*, 491 F.2d at 68. In short, the court needs more information to decide if defendant properly exempted this information.

The information also could consist of cost estimates, which Exemption 5 protects. *See Quarles v. Dep't of Navy*, 893 F.2d 390, 392–93 (D.C. Cir. 1990). As the D.C. Circuit explained, "[C]ost estimates . . . are far from fixed" and "derive from a complex set of judgments—projecting needs, studying prior endeavors[,] and assessing possible suppliers." *Id.*

at 392–93.  In contrast, the deliberative process privilege does not protect estimates made where the estimator followed a strict set of guidelines and made few subjective guesses.  *See id.* (differentiating the cost estimates used by the Navy to predict the expense of building new naval bases with property appraisals because "[the appraisals] seem to involve fewer judgment calls than estimates of what construction will cost"); *see also Petroleum Info. Corp. v. U.S. Dep't of Interior*, 976 F.2d 1429, 1438 (D.C. Cir. 1992) (holding that the deliberative process privilege does not protect acreage estimates of federal land because "it does not appear to involve the breadth of discretion, and the wide range of considerations, the many forecasts and 'judgment calls' involved in making the cost projections in *Quarles*").  Here, while the withheld document could contain estimates and assumptions that defendant made when projecting costs, the court cannot conclude with reasonable certainty that the documents contain that kind of information. So, the court concludes, it must review the document *in camera* to determine whether it is properly subject to Exemption 5 within 14 days of the court entering this Order.  *See Hull*, 656 F.3d at 1178 (instructing courts to order *in camera* review of any document if they "cannot conclude with reasonable certainty that the agency properly exempted the document").

The court also orders defendant to produce unclassified documents 18 (Bates No. 57) (withholding a document with costs defendant considered when formulating estimates), 100 (Bates No. 153–56) (withholding slides comparing costs), and 141 (Bates No. 421–24) (withholding a chart comparing costs) for *in camera* inspection within 14 days of the court entering this order.  Like document 129, the court cannot decide if these documents contain raw data or estimates and assumptions.

Also, if defendant wishes, it can submit and file a supplemental affidavit to support its decision to apply Exemption 5.  Defendant must confine any supplementation it chooses to

provide to the issues discussed in this Order.  *See Wisdom v. U.S. Tr. Program*, 232 F. Supp. 3d 97, 130 (D.D.C. 2017) (denying an agency's motion for summary judgment in part and ordering the agency to "offer further detail to support its cited exemptions or turn over more material").  Defendant must submit this supplemental affidavit within 14 days of the court entering this Order.  Once defendant submits its supplemental affidavit, plaintiff has 14 days to file a response to the supplemental affidavit.  The court will not allow a reply.

### ii.   Unclassified Document 165 (Bates 572–76)

Defendant withheld document 165 because it contains a "discussion about answers to questions regarding costs of military commissions."  Doc. 22-1 (*Vaughn* Index) at 32.  The deliberative process privilege protects this type of communication.  Email discussions between agency officials about how to answer a FOIA request are deliberative.  *See Competitive Enter. Inst. v. EPA*, 232 F. Supp. 3d 172, 187 (D.D.C. 2017) (holding that the deliberative process privilege protected emails between agency officials because they reflected "'the give-and-take' the deliberative process privilege seeks to protect").  Here, the *Vaughn* index establishes that document 165 involves "'the give-and-take' the deliberative process privilege seeks to protect" because it captured a deliberation about how to answer questions.  *Id.*  Plaintiff has not produced contradictory evidence or even evidence that defendant has used this justification in bad faith.  This differs from the information document 129 might contain because a discussion about what costs to use essentially equates to drafts of factual material, which Exemption 5 protects.  *See Nat'l Wildlife Fed'n*, 861 F.2d at 1122 (holding that Exemption 5 protects drafts of factual compilations because the public could "reconstruct the predecisional judgments of the administrator" who ultimately releases the factual summary).  The court thus finds that defendant's use of the deliberative process privilege for document 165 is proper.

### iii.    Unclassified Document 193 (Bates 703–09)

Document 193 contains "public affairs guidance and draft questions and answers about closure plan."  Doc. 22-1 (*Vaughn* Index) at 36.  It is entitled "Site Survey LA Docs Attachments:  DOD Site Suveys.docx, Congressional Notifications Regarding Site."  *Id.* Plaintiff argues that Exemption 5 does not protect Congressional Notifications.

If the only information the court had about document 193 was its title, the court likely would agree with plaintiff.  But the description in the *Vaughn* Index and defendant's affidavit convince the court that defendant properly invoked Exemption 5.  The public affairs guidance is deliberative because it reflects agency discourse about what public statements the agency should make.  *See Am. Civil Liberties Union v. U.S. Dep't of Homeland Sec.*, 738 F. Supp. 2d 93, 112 (D.D.C. 2010) (holding that the deliberative process privilege protected a talking points memo because the talking points were "ripe recommendations that are ready for adoption or rejection by the Department").  And the deliberative process privilege protects the questions and answers about the closure plan because they are drafts.  *See Integrity Comm.*, 501 F.3d at 1228 (citing *National Wildlife Federation*, 861 F.2d at 1122, for the rule that the deliberative process privilege protects drafts).  Defendant thus invoked the deliberative process privilege properly for document 193.

### iv.    Classified Documents 77 & 78 (Bates 1362–69)

Plaintiff challenges three exemptions defendant invokes for withholding parts of documents 77 and 78:  Exemptions 5, 7(E), and 7(F).  Plaintiff specifically argues that defendant improperly invoked Exemption 5 because it gave no reason for asserting it.  And 7(E) and 7(F) don't apply, plaintiff says, because defendant has justified their use improperly.

Documents 77 and 78 consist of a series of charts. Doc. 22-1 (*Vaughn* Index) at 51–52. All but two are entitled "GTMO Closure Major activities list with associated costs." *Id.* The other two are entitled "Summation w/ all comms data preserved." *Id.* Defendant invoked Exemptions 5, 7(E), and 7(F) together for all the charts, arguing that they contain "[l]aw enforcement records slide[s] detailing costs of detention logistics." *Id.*

The court first addresses plaintiff's argument that defendant never justified its use of Exemption 5. Plaintiff incorrectly claims that defendant never gave a reason it invoked Exemption 5. While the *Vaughn* Index contains no explanation immediately following the words "(b)(5)"—the statutory designation of Exemption 5—defendant provides its justification, described above, after it invoked Exemptions 7(E) and 7(F). It is evident this explanation clearly applies to Exemption 5 as well because defendant grouped these exemptions together. Defendant simply saved space in the *Vaughn* Index by giving one explanation for all its exemptions.

Turning to plaintiff's arguments about Exemptions 7(E) and 7(F), the court agrees with plaintiff. Law enforcement costs do not implicate the harms 7(E) and 7(F) are designed to protect. Costs, without copious amounts of detail, cannot disclose law enforcement techniques, procedures, or guidelines in a way that could allow someone to circumvent the law. *See* 5 U.S.C. § 552(b)(7)(E). Nor would the disclosure of costs put anyone's life or physical safety in danger. *See id.* § 552(b)(7)(F). Indeed, the court can find no case where a court protected information about costs under Exemption 7(E) or 7(F). Defendant cited none. In contrast, though, the court concludes that defendant properly redacted this information under Exemption 5. As discussed above, Exemption 5 protects an agency's cost estimation. *Quarles*, 893 F.2d at 393. And these charts involve cost estimations because they list costs for closing GTMO—an event that hasn't

24

occurred yet.  So, this information falls within Exemption 5's protection and defendant properly withheld it.

### v.   Classified Document 101B (Bates 1463–65)

Document 101B is an information memo.  Doc. 22-1 (*Vaughn* Index) at 54.  Defendant withheld portions of it because it contained a "discussion on closure plan for detention facility." *Id.*  Because the memo is entitled "Information Memo," plaintiff argues, Exemption 5 does not apply.  But defendant has produced additional evidence that supports its use of this exemption: the description in the *Vaughn* Index.

The *Vaughn* Index entry for this document reveals that the document contains a discussion of GTMO's closure.  And, as the Tenth Circuit has instructed, Exemption 5 aims, in part, to promote "'open and frank discussion among those who make [decisions] within the government'" by withholding internal agency discussion from FOIA's reach.  *Integrity Comm.*, 501 F.3d at 1226 (quoting *Klamath Water Users*, 532 U.S. at 8–9); *see also Competitive Enter.*, 232 F. Supp. 3d at 187 (protecting agency emails that show "'the give-and-take' the deliberative process privilege seeks to protect").  Revealing a discussion about the GTMO closure plan might hamper frank internal discussion.  The court thus concludes that Exemption 5 protects document 101B from disclosure.

### vi.   Classified Document 104B (Bates 1496–98)

Document 104B is also an information memo, but this memo has a "discussion of three options for transferring detainees."  Doc. 22-1 (*Vaughn* Index) at 54.  Plaintiff—as it did when attacking document 101B's withholding—argues that Exemption 5 cannot protect information memos.  But, as explained in the preceding subsection, Exemption 5 protects memos that discuss how an agency might proceed on a project.  *See Competitive Enter.*, 232 F. Supp. 3d at 187

(holding that the deliberative process privilege protected emails where agency officials discussed options for the best response to a FOIA request). And disclosing these options beforehand could hamper frank and open discussion within an agency and risk disclosing proposed policies never adopted. *See Integrity Comm.*, 501 F.3d at 1226 (explaining that courts should uphold an agency's use of Exemption 5 if the agency can show that either a document's disclosure could hamper internal deliberation or a risk exists that the document will confuse the public by releasing an option the agency never publicly announced). Defendant thus properly withheld document 104B under the deliberative process privilege.

### vii.   Classified Document 234 (Bates 2363–64)

Document 234 redacts the name of an agency or person—it's unclear from the document which it is—who was involved in planning a survey visit to a potential GTMO replacement site. Defendant claims the identity of the persons or agencies involved with a decision can show an agency's deliberation process. But defendant never elaborates on how disclosing this name could reveal defendant's deliberation process. The court agrees that the identity of those involved might reveal an agency's deliberation process, but it cannot conclude on the current record that disclosing this name will reveal its deliberative process. Indeed, courts sometime require federal agencies to disclose the identity of all participants in a discussion. *See Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 868 (D.C. Cir. 1980) (explaining that the identity of a memo's recipient and author can be important to decide the propriety of Exemption 5's use because a subordinate's memo to a supervisor is more indicative of a predecisional, deliberative document while a memo from a supervisor is more indicative of a postdecisional explanation about a decision).

Here, the court currently lacks sufficient information to decide if the identity of the unknown actor will reveal the deliberative process. So, it cannot rule that no genuine issue of material fact exists whether defendant properly invoked Exemption 5 for document 234. The court thus orders defendant to produce document 234 for *in camera* review. With its *in camera* production, defendant may also file a supplemental affidavit. Defendant must confine any supplementation it chooses to provide to the issues discussed in this Order. *See Wisdom*, 232 F. Supp. 3d at 130 (ordering an agency to "offer further detail to support its cited exemptions or turn over more material" when the court denied in part the agency's motion for summary judgment). Once defendant files its supplemental affidavit, plaintiff will have 14 days to file a response. The court will not allow a reply. The court will defer a final ruling on this document until after its *in camera* review of the document in a supplemental order on the Motion for Summary Judgment.

### viii.    Classified Document 241 (Bates 2377–79)

Finally, plaintiff argues that defendant improperly supported its use of Exemption 5 to withhold parts of document 241. Document 241 is a scanned paper document entitled "GTMO Closure Major activities list with associated costs." Doc. 22-1 (*Vaughn* Index) at 74. Like documents 77 and 78, defendant invoked Exemptions 5, 7(E), and 7(F) together and gives a single explanation why they apply. *Id.* The justification, defendant contends, is that document 241 has "[l]aw enforcement records slide[s] detailing costs of personnel and guard force." *Id.* Much like documents 77 and 78, the court concludes that this explanation, which provides defendant's rationale for using all the invoked exemptions, is sufficient to justify defendant's use of Exemption 5. Because document 241 details the costs associated with closing GTMO, the

withheld information is an estimated cost that falls within the deliberative process privilege. *See Quarles*, 893 F.2d at 392–93.

### C.    GTMO Transfer Expenditures

With its last argument, plaintiff contends that the court should deny defendant's motion because defendant omitted information about defendant's travel expenses to survey possible relocation sites for GTMO detainees, which plaintiff requested.  In its response to this request, defendant provided a one-page chart that lists three locations that defendant surveyed:  Fort Leavenworth, Kansas; Charleston, South Carolina; and Florence, Colorado.  Doc. 27-1 at 1. Defendant lists air fare, per diem, and incidentals for each trip.  *Id.*

Plaintiff claims that defendant has withheld cost data about other locations that it surveyed.  Plaintiff highlights Mr. Herrington's Declaration, where he explains that defendant "provided a one-page interim response to [plaintiff's request for an expenditure report on travel to possible relocation sites], consisting of a document summarizing [defendant's] costs incurred from *certain* site surveys . . . ."  Herrington Decl. ¶ 11 (emphasis added).  And, plaintiff argues, a series of slides defendant produced in this request create a suspicion that defendant considered other sites.

Defendant has clarified its affidavit and the slides.  Its clarification explains that, in the end, it recommended 13 sites for possible relocation.  Doc. 30-1 (Herrington Supp. Decl.) ¶ 4. But it only surveyed sites at the three locations listed in the chart.  *Id.*  So, what Mr. Herrington meant to say in the original declaration was that though defendant considered other sites, it only visited the three locations listed in the chart.  With this clarification, the court concludes that defendant has fulfilled its obligation to report GTMO relocation survey expenses.  That defendant considered other sites does not contradict defendant's assertion that it only traveled to

three locations. *See Hull*, 656 F.3d at 1177–78 (holding that summary judgment is proper in a FOIA case when the record does not contradict the agency's affidavits and no evidence exists that the agency acted in bad faith). Defendant thus fulfilled its FOIA obligations to respond to plaintiff's request for information about the GTMO relocation survey expenses.

## IV.    Conclusion

For reasons explained above, the court grants defendant's Motion for Summary Judgment (Doc. 21) in part and denies it in part. The court concludes that defendant fulfilled its duties under FOIA except for unclassified document 18 (Bates 57), 100 (Bates 153–56), 129 (Bates 333), 141 (Bates 421–24), and classified document 234 (Bates 2363–64). The court lacks sufficient information to decide if defendant properly exempted the information those documents contain. So, the court orders defendant to produce unclassified documents 18, 100, 129, 141 and classified document 234 for *in camera* review within 14 days of this Order's entry. Defendant, if it chooses, also must file a supplemental affidavit within 14 days of this Order's entry. Defendant must confine its supplementation to the issues the court raised in this Order. Plaintiff will have 14 days to respond to defendant's supplemental affidavit. The court will not allow a reply. Once the court has the unredacted documents, defendant's supplemental affidavit, and plaintiff's response, the court will issue a supplemental order on the Motion for Summary Judgment.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant's Motion for Summary Judgment (Doc. 21) is granted in part and denied in part.

**IT IS FURTHER ORDERED THAT** defendant must produce to the court unclassified document 18 (Bates 57), 100 (Bates 153–56), 129 (Bates 333), 141 (Bates 421–24), and

classified document 234 (Bates 2363–64) for *in camera* review within 14 days of the court

entering this Order.  The court will rule on the applicability of the exemptions at a later date.

**IT IS FURTHER ORDERED THAT** defendant file a supplemental affidavit

responding to the issues raised in this Order within 14 days of this Order's entry.  Plaintiff must

respond to defendant's supplemental affidavit within 14 days of defendant filing it.  The court

will not allow a reply.

**IT IS SO ORDERED.**

**Dated this 21st day of March, 2018, at Topeka, Kansas.**


**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**