IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

**STATE OF KANSAS,** *ex rel.* **DEREK SCHMIDT, in his official capacity as Attorney General of the State of Kansas,**

**Plaintiff,**

v.

**UNITED STATES DEPARTMENT OF DEFENSE,**

**Defendant.**

Case No. 16-4127-DDC-KGS

## MEMORANDUM AND ORDER

In this lawsuit, the State of Kansas and the United States Department of Defense disagree whether the latter adequately responded to Kansas's Freedom of Information Act ("FOIA") request. In general terms, the State of Kansas—the plaintiff—asked the Department of Defense for its files arising from President Obama's plan to close the Guantanamo Bay detention center ("GTMO"). On July 12, 2017, the Department of Defense—the defendant—filed a motion for summary judgment. It argued that defendant fully had complied with FOIA's mandate. Eight months later, the court entered its preliminarily Order on that motion. Doc. 31. In that Order, the court ordered defendant to submit five documents for *in camera* inspection so that the court could determine whether FOIA exempted those documents from disclosure. They are: unclassified documents 18, 100, 129, 141, and classified document 234. *Id.* at 29–30. The court explained that it would issue a supplemental ruling once it conducted its *in camera* review. *Id.* at 29.

Defendant complied with the court's Order. And the court, having reviewed the five central documents, is ready to decide the only remaining issues in the case. For reasons explained below, the court grants defendant's motion in part and denies it in part. The court concludes that defendant improperly redacted unclassified documents 18, 129, 141, and classified document 234. But it properly withheld the information in unclassified document 100.

**I.     Background**

The court provided a more detailed version of the facts in its original Order. *See* Doc. 31 at 2–4. So, the court merely summarizes the facts essential to the current issues.

GTMO is a U.S. Naval base on the island of Cuba that houses combatants captured in the Middle East. In 2009, President Obama signed an Executive Order directing defendant to research the feasibility of closing GTMO and transferring detainees to, among other places, the United States mainland. Exec. Order No. 13,492, 74 Fed. Reg. 4,897, 4,898 (Jan. 22, 2009).

On December 16, 2015, plaintiff sent defendant a FOIA request. Plaintiff asked defendant to produce information created between December 26, 2013, and December 16, 2015, about the GTMO closure plan. When defendant delayed releasing the responsive documents, plaintiff filed this suit. *See* Doc. 1. Eventually, defendant released all the documents sought by plaintiff's request but redacted portions of many of them, citing FOIA's exemptions. Then, defendant moved for summary judgment, arguing that it had complied fully with FOIA's obligations.

The court granted that motion in part and denied it in part. Importantly, for this Order, the court explained that it did not have enough information to decide if defendant properly withheld unclassified documents 18, 100, 129, 141, and classified document 234. The court ordered defendant to provide the court with unclassified documents 18, 100, 129, and 141

because the court could not decide whether those documents contained cost estimations—which FOIA protects—or raw data used when defendant deliberated its options—which FOIA does not protect. Doc. 31 at 20. And it ordered defendant to produce classified document 234 because it could not discern if a name defendant had redacted would reveal defendant's deliberative process. *Id.* The court also allowed defendant an opportunity to file a supplemental affidavit further explaining its justifications for exempting these documents. The court also provided plaintiff the chance to respond to that supplemental affidavit. *Id.* at 30. The court advised that it would delay its final judgment on defendant's motion until after it reviewed the documents. On April 4, 2018, defendant delivered the documents to the court. *See* Doc. 32. It simultaneously filed its supplemental affidavit. Doc. 32-1. Plaintiff filed its response two weeks later. Doc. 33.

## II.     Legal Standard

Summary judgment is appropriate if the moving party demonstrates that "no genuine dispute [about] any material fact" exists and that it "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When applying this standard, the court views the evidence and draws inferences in the light most favorable to the non-moving party. *Nahno-Lopez v. Houser*, 625 F.3d 1279, 1283 (10th Cir. 2010). To prevail on summary judgment in a FOIA case, "the defending agency has the burden of showing that its search was adequate and that any withheld documents fall within an exemption to FOIA." *Whitson v. U.S. Forest Serv.*, 253 F. Supp. 3d 1133, 1139 (D. Colo.), *reconsidered and reversed on other grounds by* 264 F. Supp. 3d 1096 (D. Colo. 2017). A defendant meets its burden if it submits, in good faith, specific, non-conclusory affidavits that are consistent with the record. *Hull v. IRS, U.S. Dep't of Treasury*, 656 F.3d 1174, 1177–78 (10th Cir. 2011).

3

**III.     Discussion**

Here, the court only must decide whether defendant properly invoked Exemption 5 under FOIA. The court first considers the type of information protected by Exemption 5. Then, the court analyzes whether Exemption 5 protects the documents the court reviewed *in camera*.

**A.     Exemption 5**

Exemption 5 protects documents that normally are privileged in the civil discovery context. *NLRB v. Sears Roebuck & Co.*, 421 U.S. 132, 149 (1975). Here, defendant invoked the "deliberative process privilege" when it withheld information under Exemption 5. This privilege exempts documents "that reflect how government decisions are made." *Stewart v. U.S. Dep't of Interior*, 554 F.3d 1236, 1239 (10th Cir. 2009). To qualify for this privilege, the document must be (1) predecisional and (2) deliberative. *Trentadue v. Integrity Comm.*, 501 F.3d 1215, 1227 (10th Cir. 2007). As the court previously concluded, all the documents plaintiff requested are predecisional. Doc. 31 at 11.

So, the dispositive question here is whether the remaining documents are deliberative. The term "deliberative" encompasses "'advisory opinions, recommendations[,] and deliberations compromising part of a process by which governmental decisions and policies are formulated.'" *Id.* at 1226 (quoting *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001)). In contrast, purely factual, investigative material falls outside the deliberative process privilege's scope. *Id.* at 1227.

As a guide to applying this rule, controlling precedent requires the court to consider FOIA's two policy justifications for withholding predecisional, deliberative information. *See id.* at 1226. First, withholding this information allows government officials to communicate candidly during the decision-making process. *Id.* And second, this exemption protects the

4

agency from sending mixed signals through the "premature disclosure of proposed policies" that an agency may not implement, or reasons for an agency's decision that it ultimately declines to adopt. *Id.* At the same time, the court must construe FOIA's exemptions narrowly. *Id.*

But the court cannot rely solely on the factual/opinion distinction when deciding whether a document is "deliberative." Some factual material will "'so expose the deliberative process within an agency'" that a court must consider it "deliberative." *Id.* (quoting *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 256 (D.C. Cir. 1977)). This situation presents itself when the factual content "would reveal deliberative information by allowing the public to easily infer [deliberative information] from [the factual content]," or the facts are "inextricably intertwined with deliberative material." *Id.* at 1229. For example, the deliberative process privilege protects unreleased drafts of purely factual materials because the public "could simply compare the contested draft documents prepared by lower-level [agency] personnel to the final documents adopted by the agency in order 'to reconstruct the predecisional judgments of the administrator.'" *Id.* at 1228 (quoting *Nat'l Wildlife Fed'n v. U.S. Forest Serv.*, 861 F.2d 1114, 1122 (9th Cir. 1988)). And the deliberative process privilege protects an agency's factual summary of publicly available information because "disclosure would reveal 'what advice as to [the] importance and unimportance of facts the Administrator received, and how much of it he accepted.'" *Id.* at 1229 (quoting *Montrose Chem. Corp. of Cal. v. Train*, 491 F.2d 63, 70 (D.C. Cir. 1974)).

But the Tenth Circuit has disapproved of agencies withholding "factual material simply because it reflects a choice as to which facts to include in a document . . . ." *Integrity Comm.*, 501 F.3d at 1229. This is so because "'[a]nyone making a report must of necessity select the facts to be mentioned . . . .'" *Id.* (quoting *Playboy Enters., Inc. v. DOJ*, 677 F.2d 931, 935 (D.C.

5

Cir. 1982)). The Tenth Circuit feared that allowing an agency to claim that every document containing facts is deliberative might permit federal agencies to withhold almost anything. *Id.* To be sure, circumstances exist where an agency's factual compilation would reveal its deliberative process. *See, e.g.*, *Montrose*, 491 F.2d at 68 (holding that Exemption 5 protected a factual summary of a publicly available record). But an agency must explain why "the *only* new information which disclosure of [factual] summaries would provide [plaintiff] concerns the mental processes of the agency." *Id.* (emphasis added).

### B. Documents

As noted above, the court ordered defendant to produce unclassified documents 18, 100, 129, 141, and classified document 234 for an *in camera* inspection. After reviewing these documents, the court concludes that Exemption 5 does not reach unclassified documents 18, 129, or 141 because each one contains factual information that defendant used in its deliberations. Nor does Exemption 5 protect classified document 234. But unclassified document 100 contains cost projections and assumptions, which qualifies it for Exemption 5's protection. The court explains its reasoning, in the next three subsections.

#### 1. Unclassified Documents 18 (Bates 57), 129 (Bates 333), and 141 (Bates 421–24)

Unclassified documents 18, 129, and 141 all contain information about past costs. Document 18 is a chart specifying the past costs to maintain a Colorado Department of Corrections facility. Doc. 32-1 ¶ 5. Document 129 is a table of the 2014 legal costs to operate GTMO. *Id.* ¶ 7. And document 141 compares the past costs of housing an inmate at a Bureau of Prison's facility versus GTMO. *Id.* ¶ 8. In sum, these documents describe the actual cost the Colorado Department of Corrections, the Department of Defense, and the Bureau of Prisons

6

incurred housing prisoners in the past. The deliberative process privilege does not protect this type of information.

*Reilly v. United States EPA*, 429 F. Supp. 2d 335 (D. Mass. 2006), is instructive. In *Reilly*, plaintiff asked the EPA for documents about a new regulation it had enacted for mercury emissions from power plants. *Id.* at 336. The EPA withheld some documents, arguing that the deliberative process privilege applied. *Id.* at 336–37. Specifically, the EPA argued, Exemption 5 protected the results and inputs of a computer model it had run. *Id.* The EPA ran the model several times, but only released the results and the inputs that produced those results of a few runs. *Id.* at 338. The unreleased results and the inputs that led to them, the EPA argued, would reveal which variables the EPA deemed important and thus they were deliberative. *Id.* at 349.

While recognizing the decision was a close one, the court concluded that FOIA required the EPA to release all the models it had run. *Id.* at 352. The court reasoned that the models generated "raw data" and thus were investigative tools. *Id.*; *see also EPA v. Mink*, 410 U.S. 73, 93 (1973) ("Exemption 5 . . . requires different treatment for material reflecting deliberative or policy-making matters on the one hand, and purely factual, investigative matters on the other."), *superseded by statute on other grounds*, Pub. L. No. 93-502, 88 Stat. 1561 (1974). The court acknowledged that the public might draw inferences about the EPA's deliberative process from the inputs it chose. *Reilly*, 429 F. Supp. 2d at 352. But the court concluded that protecting this information simply because the public *might* decipher the EPA's deliberative process would amplify Exemption 5's power in a way that would nullify FOIA's disclosure goal. *Id.*; *see also Integrity Comm.*, 501 F.3d at 1229 (rejecting the idea that the deliberative process privilege protects "factual material simply because it reflects a choice as to which facts to include in a document").

7

The information in documents 18, 129, and 141 fits within the gravamen of *Reilly*. The actual costs of housing the detainees in various places is similar to the information the EPA used in *Reilly* to guide its discussion of mercury emissions. Both contain data—not projections—the agency considered while making its decision. Defendant argues that Exemption 5 protects this data because it was integral to its decision-making. But "integral" information is not what Exemption 5 protects. Instead, Exemption 5 only protects factual information that allows "the public to easily infer" deliberative information from factual content or is "inextricably intertwined with deliberative material." *Integrity Comm.*, 501 F.3d at 1229.

Here, no deliberative information is "inextricably intertwined" with the factual information. These documents contain no trace of opinions about the costs in the documents or recommendations based on this data. In short, these documents are "compiled factual material." *Integrity Comm.*, 501 F.3d at 1227. Nor does defendant establish that the public could infer the deliberative process easily from these documents. Defendant does not direct the court to any public record which the public could use to compare these documents and glean the information defendant found important or unimportant, as was the case in *Montrose*. As the Circuit instructed, "information is not protected simply because disclosure would reveal some minor or obvious detail of an agency's decisionmaking process," *id.* at 1228—*i.e.*, that defendant considered the financial implications of moving the detainees. The court thus denies defendant's motion for summary judgment against the challenge to defendant's withholdings of unclassified documents 18, 129, and 141.

### 2. Unclassified Document 100 (Bates 153–56)

Unclassified document 100 is different, however. This document shows projected costs from detainees staying at GTMO vis-a-vis moving them to another facility. As the D.C. Circuit

has explained, "cost estimates . . . are far from fixed" and they "derive from a complex set of judgments—projecting needs, studying prior endeavors[,] and assessing possible suppliers." *Quarles v. Dep't of Navy*, 893 F.2d 390, 392–93 (D.C. Cir. 1990). The deliberative process privilege protects these types of estimates. *Id.* at 393. Indeed, many of the columns in document 100 contain assumptions made by defendant's personnel. *See Sierra Club v. U.S. Dep't of Interior*, 384 F. Supp. 2d 1, 24 (D.D.C. 2004) (holding the deliberative process privilege protected a document that contained an agency's assumptions about the outcome of a proposed course of action). Defendant properly withheld this document under Exemption 5. So, the court grants defendant's summary judgment motion for unclassified document 100.

### 3. Classified Document 234 (Bates 2363–64)

Document 234 contains an email. Defendant redacted several aspects of it. In the middle of the email, defendant redacted the draft of another email planning a survey team's visit to a potential detainee transfer site. This information is clearly protected. *See Integrity Comm.*, 501 F.3d at 1228 (citing *National Wildlife Federation*, 861 F.2d at 1122, for the rule that the deliberative process privilege protects drafts). But defendant also redacted an agency's name in the email's opening and final paragraphs. Defendant argues that Exemption 5 protects this agency's name and explains in its supplemental affidavit, "[t]he *in camera* review of this document will provide the necessary information for this [c]ourt to decide" whether the deliberative process privilege protects this name. Doc. 32-1 ¶ 9.

After conducting its *in camera* review, the court cannot glean this "necessary information" supporting defendant's use of the deliberative process privilege to withhold the agency's name. Defendant argued in its Reply in Support of its Motion for Summary Judgment that the deliberative process privilege applied because revealing this agency's identity would

9

expose its involvement and the speed at which it moved. Doc. 30 at 14–15. The court has found no case to support defendant's contention—and defendant cites none—that Exemption 5 protects an agency's name because it might reveal that agency's involvement in the deliberative process. Nor does the court understand how revealing this agency's name would hinder frank discussion between officials or reveal "reasons or rationales for a course of action which were not in fact the ultimate reasons for the agency's actions." *Integrity Comm.*, 501 F.3d at 1226. Indeed, defendant didn't redact the names of other agencies involved in GTMO's closure—for example, the Department of Justice. Defendant provides no explanation why revealing the Department of Justice involvement does not reveal defendant's deliberative process but revealing the unnamed agency's name would. The court thus concludes that defendant failed to meet its burden to show that Exemption 5 applies to the redactions of an agency's name in document 234.

**IV.     Conclusion**

For reasons explained above, the court grants defendant's Motion for Summary Judgment (Doc. 21) in part and denies it in part. The court grants the motion except for unclassified documents 18, 129, 141, and classified document 234. While the ruling memorialized by this Order seems to resolve all disputed issues, plaintiff has not filed a cross-motion for summary judgment. The court thus questions whether it can enter a final judgment on the current procedural record. The court wants to discuss that issue with the parties and plan for any future proceedings in the case. To that end, the court schedules a pretrial conference under Fed. R. Civ. P. 16 for **August 9, 2018, at 1:30 pm**. Counsel shall call 888-363-4749 and enter access code 8354715 to participate in the hearing. If counsel's schedule will not accommodate that setting, they may propose an alternative setting before August 9, 2018, by contacting courtroom deputy Megan Garrett at ksd_crabtree_chambers@ksd.uscourts.gov.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant's Motion for Summary Judgment (Doc. 21) is granted in part and denied in part.

**IT IS FURTHER ORDERED THAT** this case is set for a telephone status conference for **August 9, 2018, at 1:30 pm.** Counsel shall call 888-363-4749 and enter access code 8354715 to participate in the hearing.

**IT IS SO ORDERED.**

**Dated this 23rd day of July, 2018, at Topeka, Kansas.**

                                                **s/ Daniel D. Crabtree**
                                                **Daniel D. Crabtree**
                                                **United States District Judge**